UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESMOND ERWIN JOHNSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No.  18-10447

HON. MARIANNE O. BATTANI
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

**REPORT AND RECOMMENDATION**

    Plaintiff Desmond Erwin Johnson ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

## PROCEDURAL HISTORY

On May 5, 2015, Plaintiff filed applications for SSI and DIB, alleging disability one day earlier (Tr. 207, 212). After the initial denial of the claim, Administrative Law Judge ("ALJ") Roy E. LaRoche, Jr. held a hearing on October 3, 2016 in Detroit, Michigan (Tr. 34). Plaintiff, represented by attorney Claire Semetski, testified (Tr. 39-78) as did Vocational Expert ("VE") Dr. Don Harrison (Tr. 78-82). On January 13, 2017 ALJ LaRoche found that Plaintiff was not disabled (Tr. 18-29). On December 11, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on February 7, 2018.

## BACKGROUND FACTS

Claimant, born April 14, 1978, was 38 when the ALJ made the non-disability determination (Tr. 29, 107). He completed ninth grade and worked previously as a construction laborer and in shipping and receiving for a retailer (Tr. 248). His application for benefits alleges disability due to bilateral Carpal Tunnel Syndrome ("CTS"), back problems, and right-side numbness (Tr. 247).

### A. Plaintiff's Testimony

Plaintiff lived in a single family home with his mother, sister, and his sister's two daughters (Tr. 39). He held a valid driver's license and drove once a day (Tr. 40). He received food stamps, cash assistance from the state, and medical care (Tr. 40). Between 2004 and 2009 he worked as a sales associate but the position also required him to stock and unload trucks (Tr. 41). The job required him to lift up to 40 pounds (Tr. 41). After that, he

worked for another establishment as an "unloader and processor," until May, 2015 (Tr. 41).

Plaintiff's disabling back problems resulted from a 2010 car accident (Tr. 41). He stopped working in May, 2015 after he was unable to perform the physical demands of his job, noting that at the time he stopped work, he required back surgery (Tr. 42). He underwent cervical spine fusion surgery in August, 2015 (Tr. 43). He did not attend post-surgical followup appointments regularly and had not attended physical therapy due to transportation problems (Tr. 44). He noted that a transportation service he had contacted had "a waiting list" (Tr. 44). He had canceled one followup appointment due to back pain (Tr. 45). He did prescribed home exercises sporadically, noting that some of the exercises were "wearing" (Tr. 45). Since the alleged onset of disability date, Plaintiff received treatment for migraines only once and had not received treatment for lower spine problems (Tr. 46). He had been prescribed Norco (Tr. 46). He currently received treatment from internist Dr. Gupta (Tr. 47).

Plaintiff, left-handed, had already undergone left carpal tunnel release surgery and was scheduled for surgery on the right (Tr. 48). He continued to experience left wrist pain but the pain on the right was "way worse" (Tr. 61). He had been instructed to use a left wrist brace "as needed" (Tr. 51). He experienced chronic pain and neuropathy of the left arm since undergoing the cervical fusion surgery (Tr. 48). He received prescriptions for Norco from a pain management specialist (Tr. 49).

Plaintiff attributed multiple "falls" to neck/ balance problems (Tr. 51). He denied seizures (Tr. 51). He took Nortriptyline and Reglan for migraines, noting that he experienced around 10 migraines each month (Tr. 52-53). He was currently "tapering off" Norco but continued to take Neurontin and Gabapentin (Tr. 54). He denied any mental health problems (Tr. 54-55). Steroid injections helped symptoms of CTS temporarily (Tr. 57).

Despite experiencing level "seven to ten" out of level ten neck pain when not taking pain medication, his "real issue" was lower back pain (Tr. 57-58). The lower back pain radiated down his right leg into his foot (Tr. 58). He experienced level "eight to ten" low back pain (Tr. 60). A physician had restricted him to lifting no more than a gallon of milk following the left Carpal Tunnel surgery but Plaintiff felt that "as the months go on" he could add more weight (Tr. 62). He stated that he was unable to lift more than a couple of pounds (Tr. 63). He had not seen the hand surgeon in several months and did not know what restrictions would be imposed at the time of hearing (Tr. 64).

Plaintiff requested a prescription for a cane due to leg numbness causing right foot drag (Tr. 64). He still needed the cane but admitted that he left it in his car and was able to walk around the house without it (Tr. 65). He smoked six cigarettes a day but denied the use of alcohol or illicit drugs (Tr. 65). He could walk for up to 40 feet with a cane and 15 feet without (Tr. 66). He was able to stand in one place for up to an hour so long as he had something to lean against (Tr. 66). He was unable to stand for more than five minutes

without support (Tr. 67). He did not experience problems sitting (Tr. 67). He was unable to lift a gallon of milk with the left hand but could lift more than a gallon with the right (Tr. 68). He did not experience problems reaching but had problems with fine manipulative activity due to finger numbness (Tr. 68).

Plaintiff spent most of his waking hours watching television (Tr. 69). He was able to drive short distances and shop by himself (Tr. 69). Since the back surgery, he refrained from shoveling snow and other yard chores (Tr. 71). In response to questioning by his attorney, Plaintiff reported that he was required to sit down to put his pants on in the morning (Tr. 72). He had recently fallen after tripping over a piece of wood (Tr. 72). He experienced falls three or four times a year (Tr. 73). The migraines were characterized by problems with visual focus and ringing of the ears, and lasted around four hours (Tr. 73). He had been prescribed depression medication for bedtime use (Tr. 74). The medication helped him sleep (Tr. 75). He sometimes lay down during the day but did not take naps (Tr. 75). The prescribed medication caused the side effect of drowsiness (Tr. 76). He opined that he was unable to perform even sedentary work due to his manipulative limitations (Tr. 76). He currently had medical insurance (Tr. 76). At one point between the onset of disability and the hearing he did not have medical coverage for one month (Tr. 78).

**B.  Medical Evidence**[1]

### 1. Treating Sources

August, 2014 treating records by Marcos Santiago, D.O. note Plaintiff's report of right-sided body pain and numbness and lower back pain (Tr. 295). Plaintiff denied headaches or neck pain (Tr. 295). Plaintiff demonstrated a normal range of motion and did not exhibit gait problems (Tr. 296). Dr. Santiago deemed the low back and leg pain "minor" (Tr. 297). Imaging studies of the lumbar spine showed mild disc space narrowing at L4-L5 and degenerative changes but no other abnormalities (Tr. 323). Notes from the next month note a full range of motion and a normal mood and affect (Tr. 299). In October, 2015, Plaintiff reported moderate bilateral hand tingling and burning (Tr. 301). He showed no clinical evidence of CTS (Tr. 305).

December, 2014 records note that a recent EMG study of the upper extremities "had a conclusion of cervical radiculopathy" but that the results were "truncated" and did not include findings regarding the severity of the condition (Tr. 310). He reported that Tramadol and Naproxen improved the hand numbness and tingling (Tr. 311). He reported six migraines every month before using Imitrex and three a month after starting the medication (Tr. 311, 313). Neurological and mental status examination were wholly unremarkable (Tr. 311, 313). Plaintiff exhibited a "wide based" gait (Tr. 312).

---

[1] Treatment records pre-dating the amended alleged onset of disability date of March 8, 2011, where discussed, are included for background purposes only.

A January, 2015 MRI of the thoracic spine was unremarkable (Tr. 324). A February, 2015 MRI of the cervical spine showed a disc herniation at C5-C6 with "moderate" compression of the spinal cord (Tr. 314, 326). An MRI of the lumbar spine showed "mild to moderate" degenerative changes (Tr. 327). The following month, an MRI of the brain was unremarkable (Tr. 331). In May, 2015, Plaintiff reported that he had obtained medical insurance and was able to followup with recommendations for surgery (Tr. 320). He reported worsening numbness and weakness in both arms but demonstrated full strength in all extremities (Tr. 320-321).

In June, 2015, Plaintiff reported migraine headaches 12 days "in a row," but noted that it could be attributable to bumping his head while getting into the car (Tr. 344). Hospital records from the next month state that Plaintiff required "urgent" surgery for the cervical disc herniation (Tr. 347). He exhibited a "limping gait" (Tr. 349). Plaintiff requested a cane to avoid falls resulting from "chronic right foot drag" (Tr. 350). On July 2, 2015, Tobias Albert, M.D. stated that Plaintiff was "unable to work due to spinal cord compression and [was in] need of surgery" (Tr. 427).

Records created in the days leading up to the August 3, 2015 cervical fusion surgery note a "spastic" gait and station (Tr. 355). August 26, 2015 records by Sagger Mawri, M.D. note that Plaintiff's request for additional narcotics was refused (Tr. 364). Plaintiff refused a prescription for non-opiate analgesics, stating that he was "going to another physician for narcotic [medication]" (Tr. 364). Plaintiff demonstrated full strength in all extremities and

a normal range of motion (Tr. 365). The following month, Plaintiff reported that he was "look[ing] forward to beginning physical therapy (Tr. 367). He exhibited a normal gait (Tr. 367). In November, 2015, Plaintiff reported bilateral tingling of the hands and lower back pain (Tr. 368, 373). He was diagnosed with bilateral ulnar neuropathy and "minor" chronic back pain (Tr. 370, 374). The following month, he reported thoracic and lumbar spine pain (Tr. 383). He exhibited a normal range of motion with 4/5 strength in all extremities (Tr. 384).

January, 2016 treating records note that Plaintiff denied depression (Tr. 387). He exhibited full strength in the lower extremities and a normal gait (Tr. 389, 436). In March, 2016, physical therapy and injections were recommended (Tr. 396). The following month, Plaintiff reported only mild relief from lumbar spine pain with home exercises, muscle relaxants, and Norco but later in the month declined suggestions for surgical options, stating that the "medications were effective" (Tr. 400, 402, 443, 445). Treating records note that a recent EMG was consistent with CTS and cervical radiculopathy (Tr. 402). Plaintiff was advised to use a wrist brace and exercise at least three times a week (Tr. 407). Records from the following month note that Plaintiff exhibited a steady gait while using a cane (Tr. 403).

In June, 2016, Plaintiff reported continued hand numbness but noted that he was able to play with his daughter and perform daily activities (Tr. 412). He reported that he was able to walk without a cane but was unable to walk "long distances" (Tr. 451). July, 2016 records note full strength in the lower extremities (Tr. 416). The same month, a left ulnar nerve

release was performed without complications (Tr. 460).

### 2. Non-Treating Sources

In June, 2015, L. Imasa, M.D. performed a consultative psychological examination of Plaintiff on behalf of the SSA, noting Plaintiff's report of bilateral CTS, migraines, and lower extremity radiculopathy (Tr. 339). Plaintiff also reported mood swings, problems sleeping, and irritability (Tr. 339). He denied alcohol use but reported regular tobacco and marijuana use (Tr. 339). He reported that on a typical day, he performed self-care activities, watched television, took his medication, and ran errands (Tr. 340). Dr. Imasa found the presence of a depressive disorder, concluding that Plaintiff was "unable to function [o]n a fully sustained basis" but was able to manage his benefit funds (Tr. 341).

In July, 2015, Ruqiya Tareen, M.D. performed a non-examining review of the treating records on behalf of the SSA, finding that Plaintiff experienced no restriction in activities of daily living and mild restriction in social functioning and in concentration, persistence, or pace (Tr. 91). In July, 2015, Dines Tanna M.D. performed a non-examining assessment of Plaintiff's physical limitations, finding that he was limited to lifting/carry 10 pounds and sitting for six hours and walking/standing for four hours in an eight-hour period (Tr. 93). Dr. Tanna found limitations in pushing/pulling (Tr. 93). Dr. Tanna limited Plaintiff to occasional postural activity with a complete preclusion on the climbing of ladders, ropes, and scaffolds (Tr. 93). Dr. Tanna found a limitation to frequent handling, fingering, and feeling (Tr. 94). Dr. Tanna found that Plaintiff should avoid concentrated exposure to extreme cold, vibration,

and hazards such as machinery and heights (Tr. 95).

### C. Vocational Expert Testimony

VE Harrison stated that his testimony would be consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") unless otherwise noted (Tr. 79). He classified Claimant's past relevant work as a sales associate as semiskilled and exertionally light (heavy as performed) and stock handler, unskilled, medium (heavy as performed)[2] (Tr. 79). The ALJ then posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [Sedentary work . . . . No climbing of ropes, ladders, or scaffolds. They could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl. They could frequently handle and finger with the bilateral upper extremities. They could have occasional exposure to extreme cold. No exposure to vibration or vibrating hand tools. And no concentrated exposure to unprotected heights or dangerous, moving machinery. Could the hypothetical individual perform any of the past jobs you describe, either as actually or generally performed? (Tr. 45).

Based on the above restrictions, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the sedentary, unskilled jobs of a bench assembler (100,000 jobs in the national economy); optical inspector

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

(85,000); and surveillance monitor (65,000) (Tr. 80). The VE testified that if the same individual were additionally limited to occasional rather than frequent handling and fingering, the assembly and inspection jobs would be eliminated but the individual would be able to perform a reduced number of surveillance jobs (35,000) (Tr. 81). VE Harrison stated that if the individual described in the first hypothetical question required the use of a cane, the assembly and inspection jobs would be eliminated but the surveillance numbers (65,000) would remain unchanged (Tr. 81). He testified that the need to be off task for 20 percent or more of the workday, or, the need for two or more absences each month would preclude all unskilled competitive employment (Tr. 82). He stated that his testimony regarding the use of a cane, being off task, and absences was based on his own professional experience (Tr. 82).

### D. The ALJ's Decision

Citing the treating records, ALJ LaRoche found that Claimant experienced the severe impairments of "[CTS], status post left ulnar nerve release; degenerative disc disease of the cervical spine, status post C5-6 fusion; degenerative disc disease of the lumbar spine; and migraines" but that none of the impairments met or medically equaled the severity of an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20, 22). He found that the conditions of seizures and depression were non-severe impairments (Tr. 20). Based on Plaintiff's activities of daily living and the non-examining psychological assessment performed on behalf of the SSA, the ALJ found that Plaintiff experienced no restriction in

activities of daily living and only mild limitation in social functioning and concentration, persistence, or pace (Tr. 21). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional limitations:

> [H]e cannot climb ladders, ropes, or scaffolds. Claimant can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. Claimant's bilateral upper extremities are restricted to frequent handling/fingering. Claimant can tolerate no more than occasional exposure to extreme cold. Claimant cannot use vibratory hand tools and he must avoid concentrated exposure to unprotected heights and dangerous moving machinery (Tr. 23).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the sedentary, unskilled work of a bench assembler, optical inspector, and surveillance monitor (Tr. 28, 80).

The ALJ discounted the allegations of disability, noting that the severity of the neuropathy of the upper extremities and migraines was dramatically reduced following the August, 2015 cervical fusion surgery (Tr. 25-26). The ALJ noted that as of January, 2016, Plaintiff denied feelings of either anxiety or depression, denied dropping things, and exhibited a normal gait (Tr. 26). He noted that April, 2016 EMGs of the upper extremities showed only mild ulnar nerve compression and CTS (Tr. 26). The ALJ cited Plaintiff's report that he was "feeling fine" as of June, 2016 with only occasional migraines (Tr. 26). The ALJ accorded "little weight" to the consultative examiner Dr. Imasa's "unsupported, vague" finding that Plaintiff experienced significant psychological limitations (Tr. 27).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[3]

### Plaintiff's Need for a Cane

Plaintiff faults the ALJ's finding that he did not require a cane unless standing for "prolonged periods" or walking "long distances." *Plaintiff's Brief,* 10-12 (*citing* Tr. 27), *Docket #15,* Pg ID 516. He notes that the finding regarding the need for a cane stands at odds with his testimony that he was unable to stand for more than 10 minutes without support or walk for more than 40 feet without a cane. *Id.* at 10.

---

[3] Plaintiff does not contest the ALJ's finding that the condition of depression was non-severe (Tr. 20-21). My own review of the treating records notes that Plaintiff consistently exhibited a normal affect, mood, and orientation. Thus, I finding no error in the ALJ's finding that the mental health limitations were non-severe.

### A. Substantial Evidence Supports the ALJ's Findings Regarding the Cane Use

As to Plaintiff's alleged need for a cane for walking any significant distance, the ALJ found that "the use of an assistive device" was not required, noting that the treating records as a whole showed that Plaintiff's cane use was "sporadic" (Tr. 27). This is consistent with my own review of the records. In June, 2015, Plaintiff requested a cane to avoid falls resulting from "chronic right foot drag" (Tr. 350). However, August and September, 2015 records note a normal gait and full strength in the lower extremities (Tr. 365, 367). January, 2016 record also note full strength and a normal gait (Tr. 389, 436). In April, 2016, Plaintiff reported that his current pain medication and muscle relaxants were "effective" (Tr. 400, 402, 443, 445). While notes from the same month reference Plaintiff's use of a cane (Tr. 403), June, 2016 records note Plaintiff's report that he was able to walk without a cane but not for "long distances" (Tr. 451). Records from the following month note full strength in the lower extremities (Tr. 416). The ALJ did not err by noting that Plaintiff's use of a cane was at most "sporadic" and that he did not require a cane unless walking long distances (Tr. 27).

Plaintiff contends that his testimony that he was unable to walk more than 15 feet without the use of a cane (Tr. 66) ought to have been adopted. However, the same medical records support the ALJ's conclusion that the use of a cane was not required for walking less than "long distances," which was drawn directly from the June, 2016 medical records summarizing Plaintiff's own account of his walking abilities (Tr. 27, 451). The ALJ did not err in adopting Plaintiff's statements to his treating sources over his hearing testimony. *See*

SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016)(ALJ must consider "consistency" of claimant allegations of limitation alongside statements "made under other circumstances"); *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's finding that claimant's allegations not wholly credible entitled to deference). Plaintiff's claim that he required the use of a cane for all walking beyond a few feet is also undermined by his testimony that he generally left the cane in his car and was able to function at home without the use of a walking aid (Tr. 65).

### B. Substantial Evidence Supports the Step Five Determination Even if Plaintiff's Alleged Need for a Cane Had Been Wholly Credited,

The RFC for sedentary work crafted by the ALJ does not include the need for a cane (Tr. 23). However, even assuming that Plaintiff's alleged need for a cane for walking more than 15 feet were overwhelmingly supported by the record evidence, a remand is not warranted. The VE testified that the limitations set forth in the RFC (omitting the alleged need for a cane) would allow for the sedentary work of a bench assembler, optical inspector, or surveillance monitor (Tr. 79-80). The VE testified further that if the hypothetical individual also needed "a cane for ambulation," the jobs of bench assembler and optical inspector would be eliminated but that the job numbers for the position of surveillance monitor (65,000 positions in the national economy) would remained unchanged (Tr. 81).

The VE's testimony that the restrictions imposed by the ALJ, along with the need for a cane, would allow for 65,000 jobs in the national economy easily clears the low hurdle for a "significant" number. A finding that a claimant is capable of 60,000 jobs in the national

-16-

economy "is more than enough to constitute a significant number" to meet the Commissioner's burden at Step Five. *Lowery v. Comm'r of Soc. Sec.*, 2018 WL 3041201, at *6 (E.D.Mich., May 29, 2018)(Grand, M.J.)(*citing Taskila v. Comm'r of Soc. Sec*., 819 F.3d 902, 905 (6th Cir. 2016))(Finding of 6,000 jobs in the national economy constitutes a "significant" number).

In closing, it should be noted that my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate physical limitations. However, the finding that he was capable of a limited range of unskilled, exertionally sedentary work is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issues first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,*

932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response must address specifically, and in the same order raised, each issue contained within the objections.

                                          s/ R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Dated: February 7, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 7, 2019, electronically and/or by U.S. mail.

                                          s/Carolyn M. Ciesla
                                          Case Manager to the
                                          Honorable R. Steven Whalen